NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| MARY E. CHAMBERS, | |
|     Plaintiff, | Civil No. 13-5132 (RMB) |
|        v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
|     Defendant. | |

**APPEARANCES:**

Richard L. Frankel
Bross & Frankel, P.A.
102 Browning Lane, Building C-1
Cherry Hill, NJ 08003
    Attorneys for Plaintiff

Sergei Aden
United States Attorney's Office
c/o Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
    Attorneys for Defendant

**BUMB,** UNITED STATES DISTRICT JUDGE:

    Plaintiff Mary E. Chambers (the "Plaintiff") seeks judicial

review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the

final decision of the Acting Commissioner of Social Security

(the "Commissioner") partially denying her application for

Disability Insurance Benefits ("DIB") and Social Security

Supplemental Income ("SSI"). For the reasons set forth below,

the Court will vacate the decision of the ALJ and remand.

## I.   **Background**

### a. Procedural Background

Beginning on September 18, 2009, the Plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging a disability onset date of December 1, 2003. (Administrative Record "R." 20). Both claims were denied initially on March 13, 2010, (R. 20; Exhibits 3B & 4B) and upon reconsideration on June 16, 2010. (R. 20; Exhibits 5B & 6B). Thereafter, a written request for a hearing before an Administrative Law Judge ("ALJ") was filed on August 9, 2010. (R. 20; Exhibit 9B).

On September 13, 2011, Plaintiff, represented by attorney Bruce Sobel, appeared at the Pennsauken office for the hearing held before Honorable Judge Mark G. Barrett. (R. 20).  On December 9, 2011, the ALJ issued a partially favorable decision, (R. 19-27), which became the final judgment of the Commissioner of Social Security after the Appeals Council denied Plaintiff's request for review on June 11, 2013. (Plaintiff's Brief "Pl.'s Br." at 1). Subsequently, Plaintiff commenced this action, requesting judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (Pl.'s Br. at 1).

### b. Plaintiff's Medical Records

The record contains medical records from February 20, 2001 through October 24, 2011, during which time Plaintiff visited

several doctors regarding her various medical conditions and ailments. However, the medical records are silent on Plaintiff's physical and mental health from August 16, 2002, to April 3, 2009. Plaintiff attributed this interruption to her lack of insurance at the time. (R. 55). As such, she was not able to afford medical visits. (R. 55).

Plaintiff's medical records indicate that she has suffered from various physical and mental health problems. On February 20, 2001, Dr. Spierer indicated that Plaintiff complained of pain in her right heel for three months. (R. 232). Dr. Spierer also noted that Plaintiff had a headache that was "bothering her significantly," and that she reported being congested for a month. (R. 232).

On January 23, 2002, Plaintiff saw Dr. Patel, one of her treating physicians, for the same pain in her heel, which had spread from her heel to her knee, hips, and back. (R. 229). At this time, Dr. Patel diagnosed Plaintiff with plantar fasciitis and concluded that the pain along Plaintiff's right side originally emanated from her right heel. (R. 229). Dr. Patel also noted that Plaintiff's heel had "significant tenderness over the calcaneaus and on stretching of the plantar fascia." (R. 229). Thereafter, Dr. Goldfine, Plaintiff's other treating physician, also noted a heel spur in his medical report dated April 29, 2002. (R. 226).

In addition to the pain that radiates throughout the right side of her body, Plaintiff's medical records contain notes about her depression. For example, in Dr. Spierer's second examination of Plaintiff on August 8, 2001, he noted that Plaintiff has felt deeply depressed for four months, and that she was crying during her consultation. (R. 231). Dr. Spierer opined that "she absolutely must go to counseling[.]" (R. 231). In 2010, Plaintiff was diagnosed with dysthymic disorder[1] and generalized anxiety disorder. (Exhibit 4F; R 248-250). Furthermore, Plaintiff also testified that she generally suffered from depression since the age of five, and that she went into a "deep depression" after the death of her grandmother in 2005. (R. 41).

Plaintiff was admitted to the hospital for pain and swelling of her right hand on April 3, 2009. (Exhibit 3F). The pain and swelling of Plaintiff's middle finger was particularly noticeable. (R. 238). Subsequently, attending doctors identified the condition as flexor tenosynovitis of the right hand. (R.

---

[1] Mayo Clinic, *Dysthymia Definition*, http://www.mayoclinic.org/diseases-conditions/dysthymia/basics/definition/con-20033879 (last visited Jun. 27, 2014) ("Dysthymia is a mild but long-term (chronic) form of depression. Symptoms usually last for at least two years, and often for much longer than that. Dysthymia interferes with your ability to function and enjoy life.").

239). Plaintiff then signed out of the hospital against advice of the doctors. (R. 239).

On January 21, 2010, Dr. Waters saw Plaintiff for a mental status examination at the request of the Social Security Administration. (Exhibit 4F). Plaintiff informed Dr. Waters that she was unable to work because she has pain along the right side of her body, from her big toe, to her ankle, hips, and shoulder. (R. 248). Plaintiff also complained of difficulty walking. Regarding her mental health, Plaintiff reported being depressed "'all the time[.]'" (R. 248). Dr. Waters noted that Plaintiff is able to perform limited household chores, such as cleaning, cooking, and laundry. (R. 249). Dr. Waters opined that Plaintiff's "posture was stiff and her gait evidenced right-sided weakness and was slow." (R. 250). Based on the above, Dr. Waters concluded:

> [Plaintiff's] severe limitations are due mainly to her physical status. Her mental status plays a less significant role in her occupational limitations. Her medical/physical conditions and to a lesser extent her depression and anxiety symptomatology present her most difficult obstacles to adapting to a typical work environment.

(R. 250).

Thereafter, on February 19, 2010, Plaintiff saw Dr. Khona for an orthopedic evaluation at the request of the Social Security Administration. (Exhibit 5F). Dr. Khona reported:

- Full range of motion to Plaintiff's shoulders, elbows, forearms, wrists, and fingers bilaterally
- Full range of motion of Plaintiff's hips, ankles and knees bilaterally; and
- 75 percent flexion and extension of the lumbar spine.

(R. 253-54). Furthermore, Dr. Khona diagnosed Plaintiff with generalized pain on the right side and degenerative disc disease, and reported that Plaintiff's prognosis was "fair." (R. 254).

On February 24, 2010, Plaintiff received an x-ray of the lumbar spine, which revealed mild degenerative disc disease at the T12-L1. (R. 257).

On March 3, 2010, a state agency medical consultant examined Plaintiff. The state agent found that Plaintiff suffered from dysthymic disorder and generalized persistent anxiety. (R. 263, 265). Based on these findings, the state agent concluded that Plaintiff's affective disorders and anxiety-related disorders were non-severe, medically determinable impairments. (R. 260). Furthermore, the state agent found the following functional limitations as a result of Plaintiff's mental disorder(s):

- Mild restriction of activities of daily living;
- Mild difficulties in maintaining social functioning;
- Mild difficulties in maintaining concentration, persistence, or pace; and
- No episodes of decompensation. (R. 270).[2]

---

[2] On June 10, 2010, a second state agency medical consultant reviewed the report of the first state agent. (Exhibit 8F). The

Finally, on April 13, 2011, Plaintiff was admitted to Virtua Hospital with complaints of severe chest pain and rapid artrial fibrillation association with vomiting, shortness of breath, and palpitations. (R. 380). An electrocardiogram showed atrial fibrillation related to a right coronary artery lesion. (R. 301). Additionally, an echocardiogram evidenced severe mitral regurgitation and anterior septal and anterior apical wall motion abnormalities consistent with myocardial infarction. (R. 301). As such, Plaintiff was diagnosed with a myocardial infarction. (R. 301). Plaintiff remained at the hospital until April 30, 2011, when she was discharged in good condition. (R. 293).

Following the ALJ hearing, the ALJ requested more evidence. On October 24, 2011, Dr. Wilchfort examined Plaintiff at the request of the ALJ. (Exhibit 15F). Dr. Wilchfort diagnosed Plaintiff with coronary artery disease status-post the placement of a stent, and noted high cholesterol and pain in Plaintiff's right shoulder. (R. 429).

c. ALJ Hearing Testimony

Plaintiff was born on July 28, 1956.  (R. 33). She has completed ten years of schooling in special education, and

-------

second state agent confirmed the conclusions of the initial report. (R. 286).

resides at home with her husband, her brothers, and her son who is disabled. (R. 33-35). Plaintiff was previously employed by Maryland Specialty Wire as a machine operator. (R. 28). Plaintiff testified that she stopped working on this date because she was laid off from her job as a machine operator. (R. 39-40). However, at the time, she also suffered from pain throughout the right side of her body. (R. 40). Plaintiff attributed this pain to her job, which entailed standing for the entire eight-hour workday and occasionally pushing large metal spools over the machines. (R. 38-39). Plaintiff has not worked since December 1, 2003, the alleged onset date of her disability. (R. 24).

During the ALJ hearing, Plaintiff testified about her physical and mental health before April 30, 2011. In particular, Plaintiff testified that she has experienced severe pain and extreme limitation in her arm since 2006, and that she had trouble changing her adult son's diapers. (R. 54-55). In regards to her mental health, Plaintiff testified that she fell into a "deep depression" after her grandmother passed away in 2005. (R. 41). Plaintiff testified that, at that time, she also continued to endure pain on her right side. (R. 41).

In addition, Plaintiff testified as to her current physical symptoms. Specifically, Plaintiff stated that she has constant pain throughout the right side of her body. (R. 45). She claimed

8

that this pain affected her right hand, shoulder, arm, and ankle. (R. 45, 47). Plaintiff further testified that she was no longer able to do household chores and errands such as cleaning, cooking, and laundry. (R. 52). Lastly, Plaintiff testified that she could only stand for fifteen minutes before collapsing and that she could only sit for five minutes before it becomes too painful. (R. 46).

    d. <u>The ALJ's Decision</u>

Applying the requisite five-step analysis,[3] the ALJ concluded that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008, and that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, December 1, 2003. (R. 22). The ALJ also found that, beginning on April 30, 2011, Plaintiff has been severely impaired by coronary artery disease status-post a myocardial infarction and the placement of a stent. (R. 23). Similarly, the ALJ concluded that before April 30, 2011, the record contains "absolutely no longitudinal evidence of a severe impairment." (R. 25). Regarding Plaintiff's history of depression, the ALJ stated that her "depression is reactive to her physical condition and does not, in itself, severely impair

---

[3] <u>See</u> discussion on pages 15-16 <u>infra</u>.

her." (R. 23). In making these findings, the ALJ relied upon Plaintiff's medical reports including:

- The lack of evidence of "an impairment which severely impaired [Plaintiff] for at least twelve continuous months" in Dr. Patel and Dr. Goldfine's progress notes from February 20, 2001, to April 29, 2002. (Exhibits 1F, 2F, & 3F);
- Dr. Khona's report from February 12, 2010, which states that Plaintiff's degenerative disc disease of the lumbosacral spine does not severely impair her. (Exhibit 5F);
- The conclusion of a state agency medical consultant that there was "insufficient evidence of a severe impairment" in the record, and the confirmation of the opinion by a second state agent. (Exhibits 6F, 7F, 8F, & 10F); and
- Dr. Waters' examination of Plaintiff in January 2010, during which he diagnosed Plaintiff with dysthymia. (Exhibit 4F).

Based on the above, the ALJ determined that, since April 30, 2011, Plaintiff's impairments do not meet the criteria for listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23). Furthermore, based on his findings, and considering Plaintiff's symptoms that "can reasonably be accepted as consistent with the objective medical evidence and other evidence," (R. 24) the ALJ determined that Plaintiff had the following residual functional capacity:

- Lift and carry up to fifteen pounds occasionally;
- Stand and walk two hours in an eight-hour workday, and sit for six hours in an eight-hour workday, as required for sedentary work;
- Never climb, stoop, crouch, or crawl; and
- Only occasionally balance and kneel.

(R. 24).  In making these findings, the ALJ stated that
Plaintiff's "medically determinable impairments could reasonably
be expected to produce the alleged symptoms, and that that
[Plaintiff's] statements concerning the intensity, persistence,
and limiting effects of these symptoms are generally credible."
(R. 24).

    After performing the RFC assessment, the ALJ determined
that Plaintiff was unable to perform any past relevant work. (R.
26). Furthermore, the ALJ concluded that Plaintiff was of
advanced age on the established disability onset date, has a
limited education, is able to communicate in English, and does
not have work skills that are transferable to other jobs within
the RFC defined above. (R. 26). Then, considering Plaintiff's
age, education, work experience, and RFC as determined, the ALJ
found that there are no occupations that exist in significant
numbers in the national economy that Plaintiff can perform. (R.
26-27).

    As a result of the above findings, the ALJ found that
Plaintiff was not disabled prior to April 30, 2011. Beginning on
this date, however, the ALJ determined that Plaintiff is
disabled under section 1614(a)(3)(A) of the Social Security Act.
(R. 27). The ALJ concluded that Plaintiff is not disabled under

sections 216(i) and 223(d)[4] of the Social Security Act[5] because Plaintiff does not meet the insured status requirement, as she only "acquired sufficient quarters of coverage to remain insured through December 31, 2008." (R. 20, 27). Thus, Plaintiff's application for DIB was denied[6] and her application for SSI was granted as of April 30, 2011. (R. 27).

## II.  **Standard of Review**

A reviewing court must uphold the Commissioner of Social Security's factual findings if they are supported by "substantial evidence," even if the court would have decided the inquiry differently. 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Knepp v. Apfel</u>, 204 F.3d 78, 83 (3d Cir. 2000); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)

---

[4] Section 223(d) of the Social Security Act refers to the definition of disability generally. It is unclear whether the ALJ meant to cite to this section or section 223(c)(1), which refers to the insured status requirement. However, the ALJ can address this on remand.

[5] Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act define "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."

[6] "In order to be entitled to DIB, a claimant must establish that she became disabled prior to the expiration of her insured status." (Def's. Br. at 2); 42 U.S.C. § 423(a)(1)(A),(c)(1).

(quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938));

Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Where the

evidence is susceptible to "more than one rational

interpretation, the Commissioner's conclusion must be upheld."

Ahearn v. Comm'r, 165 F. App'x 212, 215 (3d Cir. 2006) (citing

Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984); Monsour Med.

Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

     If faced with conflicting evidence, however, the

Commissioner "must adequately explain in the record his reason

for rejecting or discrediting competent evidence." Ogden v.

Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v.

Heckler, 786 F.2d 581 (3d Cir. 1986)). Stated differently,

> [U]nless the [Commissioner] has analyzed all evidence and
> has sufficiently explained the weight he has given to
> obviously probative exhibits, to say that his decision is
> supported by evidence approaches an abdication of the
> court's duty to scrutinize the record as a whole to
> determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting

Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th

Cir. 1977)) (internal quotations omitted); see also Guerrero v.

Comm'r, No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19,

2006) ("The [administrative law judge's] responsibility is to

analyze all the evidence and to provide adequate explanations

when disregarding portions of it."), aff'd, 249 F. App'x 289 (3d

Cir. 2007).

While the Commissioner's decision need not discuss "every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), it must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections," Burnett v. Comm'r, 220 F.3d 112, 122 (3d Cir. 2000). See also Fargnoli, 247 F.3d at 42 ("Although we do not expect the [administrative law judge] to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

In addition to the "substantial evidence" inquiry, the reviewing court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r, 181 F.3d 429, 431 (3d Cir. 1999)).

### "Disability" Defined

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

14

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," [he] is ineligible for disability benefits.

> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant

15

does not suffer from a listed impairment or its
equivalent, the analysis proceeds to steps four and
five.

Step four requires the ALJ to consider whether the
claimant retains the residual functional capacity to
perform [his] past relevant work. 20 C.F.R.
§ 404.1520(d). The claimant bears the burden of
demonstrating an inability to return to [his] past
relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d
Cir. 1994). If the claimant is unable to resume [his]
former occupation, the evaluation moves to the final
step.

At this [fifth] stage, the burden of production shifts
to the Commissioner, who must demonstrate the claimant
is capable of performing other available work in order
to deny a claim of disability. 20 C.F.R.
§ 404.1520(f). The ALJ must show there are other jobs
existing in significant numbers in the national
economy which the claimant can perform, consistent
with [his] medical impairments, age, education, past
work experience, and residual functional capacity. The
ALJ must analyze the cumulative effect of all the
claimant's impairments in determining whether [he] is
capable of performing work and is not disabled. See 20
C.F.R. § 404.1523. The ALJ will often seek the
assistance of a vocational expert at this fifth step.
See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir.
1984).

## III. __Analysis__

  a. Failure to Address Conflicting Probative Evidence

At Step Two of the sequential analysis, the ALJ found that,

prior to the established onset date of April 30, 2011, "there

were no medical signs or laboratory findings to substantiate a

medically determinable impairment." (R. 22).  Plaintiff contends

that this statement implies that the ALJ found "no medically

determinable impairments, severe or otherwise." (Pl.'s Br. at

16

15). Therefore, Plaintiff's primary argument is that the ALJ
erred in finding that Plaintiff's multiple physical and mental
health problems, prior to April 30, 2011, were neither
"medically determinable" nor "severe" at Step Two of the
requisite analysis. (Pl.'s Br. at 12).[7]

At Step Two, an ALJ is directed to assess whether Plaintiff
suffers from any medically determinable impairments, or
combination thereof, which severely impair Plaintiff. (R. 21).
In effect, the inquiry at Step Two functions as a *de minimus*
screening device to dismiss unfounded claims. See Newell v.
Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). A
medically determinable impairment is one that,

> result[s] from anatomical, physiological, or
> psychological abnormalities which can be shown by
> medically acceptable clinical and laboratory
> diagnostic techniques.  A physical or mental
> impairment must be established by medical evidence
> consisting of signs, symptoms, and laboratory

---

[7] Plaintiff also argues that the ALJ erred in failing to "reach
the issue of whether any of the Plaintiff's impairments were
severe or functionally limiting" at Step Two (Pl.'s Br. at 21).
However, the ALJ did reach the question of severity as to some
of Plaintiff's impairments.  This is evidenced by the ALJ's
findings that,

- "The claimant's depression is reactive to her physical
  condition and does not, in itself, severely impair her."
  (R. 23);
- "[Plaintiff's] degenerative disc disease of the lumbosacral
  spine does not severely impair her." (R. 23); and
- "[P]rior to April 30, 2011, . . . there is absolutely no
  longitudinal evidence of a severe impairment." (R. 25).

> findings, not only by [Plaintiff's] statement of
> symptoms . . . .

(20 C.F.R. §§ 404.1508, 416.908). An impairment is considered

severe "if it significantly limits an individual's ability to

perform basic work activities." (R. 21). Furthermore,

Plaintiff's medically determinable impairment, or combination of

impairments, must have "lasted or [could] be expected to last

for a continuous period of not less than twelve months" in order

for her to be considered disabled. 42 U.S.C. § 1382c(a)(3)(A).

However, unrelated yet severe impairments that do not

individually meet the durational requirement of twelve months

cannot be tacked on to reach the Act's durational requirement.[8]

20 C.F.R. §§ 404.1522(a), 416.922(a).

Because Plaintiff must only demonstrate more than a "slight

abnormality" to satisfy the severity requirement at Step Two, an

ALJ's decision to deny disability benefits at this step "should

be reviewed with close scrutiny." McCrea v. Comm'r of Soc. Sec.,

370 F.3d 357, 360 (3d Cir. 2004). See Newell, 347 F.3d at 546

("Only those claimants with slight abnormalities that do not

significantly limit any 'basic work activity' can be denied

---

[8] 20 C.F.R. §§ 404.1522(a) provides in relevant part: "We cannot
combine two or more unrelated severe impairments to meet the 12-
month duration test.  If you have a severe impairment(s) and
then develop another unrelated severe impairment(s) but neither
one is expected to last for 12 months, we cannot find you
disabled, even though the two impairments in combination last
for 12 months."

benefits at step two.") (citation omitted). If there exists a reasonable doubt as to the severity of Plaintiff's impairments, it is "to be resolved in favor of the claimant." Id. (footnote omitted).

Plaintiff argues that the ALJ erred by not finding any of Plaintiff's impairments were medically determinable or severe at Step Two. In support of this argument, Plaintiff contends that the ALJ overlooked probative evidence which conflicts with his conclusion. (Pl.'s Br. at 16). More specifically, from February 20, 2001, through April 29, 2002, the record contains clinical evidence of plantar fasciitis and a heel spur in Plaintiff's right heel. (Exhibit 1F). Reports contained in Exhibit 1F also indicate that the generalized right-sided pain Plaintiff complains of originally emanated from this right heel. Furthermore, Dr. Khona's examination revealed that Plaintiff had a limited range of motion of the lumbar spine on flexion-extension. (Exhibit 5F). Consequently, Dr. Khona confirmed that Plaintiff suffered from generalized pain along her right side and degenerative disc disease, for which he offered a "fair" prognosis. (Exhibit 5F).  In addition to records regarding right-sided pain, Dr. Waters opined that Plaintiff suffered from severe limitations, and Plaintiff points out that the ALJ actually misstates Dr. Waters' diagnosis when he refers to it as only "mild dysthymia."

"When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason . . . . The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummer, 186 F.3d at 429 (internal citations omitted). While an ALJ need not discuss "every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), an ALJ errs by failing to address evidence in direct conflict with his findings. Landeta v. Comm'r, 191 F. App'x. 105, 110 (3d Cir. 2006). This Court finds that the ALJ failed to properly support his conclusion that Plaintiff's impairments did not severely impair her in that he has failed to resolve conflicting evidence in the record. For instance, the ALJ cites to Dr. Waters' consultative examination of Plaintiff on January 21, 2010, but does not discuss the portions of that same report that conflict with his conclusions. Dr. Waters' report states that Plaintiff suffered from "severe limitations. . . due mainly to her physical status . . . . Her medical/physical conditions and to a lesser extent her depression and anxiety symptomatology present her most significant obstacles to adapting to a typical work environment." (Exhibit 4F)(emphasis added). However, in his opinion, the ALJ only cites to this report as evidence that Plaintiff's diagnosis of dysthemia was "mild," (R. 23), despite Dr. Waters' characterization of Plaintiff's limitations as

severe. While there may be sufficient evidence supporting the ALJ's determination, i.e. Dr. Khona's report, Plaintiff's x-ray of the lumbar spine (Exhibit 5F),[9] and the state agency medical consultant's report (Exhibit 7F),[10] he must address conflicting evidence. Moreover, Plaintiff's medical records reflect a history of depression dating back to 2001, (R. 231), and the ALJ did not address conflicting evidence of a history of depression. In doing so, the ALJ did not properly address conflicting evidence as required. Landeta, 191 F. App'x. at 110. Therefore, this Court finds that remand is warranted so that the ALJ may address the conflicting probative evidence.

   b. The ALJ's Credibility Determinations

   In addition to arguing that the ALJ failed to address conflicting probative evidence, Plaintiff contends that the ALJ disregarded Plaintiff's testimony. (Pl.'s Br. at 19-20). For example, Plaintiff testified that she suffered from severe pain and extreme limitation in her right arm since 2006, and that she had trouble changing her adult son's diapers. (R. 54-55). In

---

[9] Dr. Khona's report states that Plaintiff "shows no acute distress during the examination. Her gait is normal." (R. 253). Dr. Khona also reported that Plaintiff "is able to sit, stand and walk." (R. 254). Furthermore, Dr. Khona's report and Plaintiff's x-ray only indicate mild degenerative disc disease of the lumbar spine. (R. 254, 257).
[10] The state agency medical consultant noted that Plaintiff suffered from dysthemia (R. 263); however, the consultant reported that Plaintiff's depression presented only mild functional limitations. (R. 270).

regards to her mental health, Plaintiff testified that she fell into a "deep depression" after her grandmother passed away in 2005. (R. 41). Plaintiff further attested that she was still suffering from pain on her right side in 2005. (R. 41). These portions of Plaintiff's testimony, however, are not corroborated by any other evidence, particularly medical reports, because Plaintiff did not see doctors during that period as she could not afford doctors' visits from August 16, 2002, to April 3, 2009. (R. 55). Plaintiff contends that the ALJ ignored this testimony "without comment." (Pl.'s Br. at 20).

With respect to Plaintiff's hearing testimony, the ALJ found that Plaintiff's statements to be "generally credible," (R. 23), but also stated that "having considered [her] testimony in accordance with Social Security Ruling 96-7p . . . there is absolutely no longitudinal evidence of a severe impairment." (R. 25). The ALJ said this with respect to Plaintiff's testimony regarding right-sided pain as a result of pulling heavy spools of wire. This was the only specific mention of the substance of Plaintiff's hearing testimony. Although Plaintiff's subjective complaints of pain are also contained in Plaintiff's medical records,[11] the ALJ found that Plaintiff's testimony "is

---

[11] Plaintiff testified that as of December 1, 2003, she continued to suffer from generalized pain throughout the right side of her body. (R. 40). This testimony is consistent with Plaintiff's

consistent with the conclusion that she has been disabled since April 30, 2011, but not before." (R. 26).

While the ALJ is permitted to find portions of Plaintiff's testimony not credible, he is required to provide reasons for rejecting portions of her testimony which conflict with his findings. See Burnett v. Comm'r, 220 F.3d at 122 (stating "[an ALJ] must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections"). In addition, it is insufficient for an ALJ to make a conclusory statement regarding a Plaintiff's credibility. See SSR 96-7P ("It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"). Instead, the ALJ must provide "specific reasons for the finding on credibility, supported by the evidence in the case record[.]" 20 C.F.R. § 404.1545(a)(1). "Where medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." Mason v. Shalala, 994 F.2d

---

medical records from early 2001, through April 29, 2002, which include evidence that she has suffered from:

- Plantar fasciitis and a heel spur in her right heel. (R. 232, 226);
- Pain throughout her right knee, hip, and back. (R. 229); and
- Degenerative disc disease. (Exhibit 5F).

1067-68 (3d Cir. 1993) (citations omitted). However, as the fact finder, the ALJ can "reject partially, or even entirely, such subjective complains if they are not fully credible." Weber v. Massanari, 156 F. Supp. 2d 475, 485 (E.D. Pa. 2001)(citation omitted). Nonetheless, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence." Fargnoli, 247 F.3d at 43.

The Court agrees that the ALJ erred by not discussing relevant portions of Plaintiff's testimony, especially with regard to her right-sided pain and depression, evidence of which is also contained in Plaintiff's medical records. Furthermore, it is unclear from the ALJ's conclusory statements with respect to her testimony what evidence was credited and what evidence was rejected with respect to Plaintiff's subjective limitations of pain and depression. See Cotter, 642 F.2d at 705 ("[W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected.").

Therefore, this Court finds that remand is warranted as to the assessment of Plaintiff's credibility related to her subjective complaints. While the ALJ may reach the same ultimate conclusion, he must properly indicate the evidence considered and rejected. Fargnoli, 247 F.3d at 43. ("[a]lthough the ALJ may

24

weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence.").

## IV.  __Conclusion__

For the reasons stated above, this Court will vacate the decision of the ALJ and remand. Although the ALJ may again determine reach the same determination on remand with respect to Plaintiff's impairments prior to April 30, 2011, this Court finds that the ALJ must adequately address the conflicting evidence in the record, including relevant portions of Plaintiff's testimony.[12]  An accompanying Order will issue this date.

__s/Renée Marie Bumb__
RENÉE MARIE BUMB
United States District Judge

Dated __July 28, 2014__

---

[12] This Court finds no error with respect to the ALJ's RFC determination. Nonetheless, if the ALJ does find that Plaintiff suffered from a medically determinable, severe impairment prior to April 30, 2011, on remand, he will be required to consider Plaintiff's non-severe impairments for that period.